IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 11-cv-03255-RPM

IMHOTEP SA'RA,

      Petitioner,

v.

TOM CLEMENTS, Exec. Director, Colorado Dept. of Corrections;
PAMELA PLOUGHE, Warden, Colorado Territorial Correctional Facility;
JOHN SUTHERS, Attorney General, State of Colorado,

      Respondents.

_____

MEMORANDUM OPINION AND ORDER
_____

In his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 Imhotep Sa'Ra seeks relief from his conviction and sentence for sexual assault of his estranged wife in Arapahoe County District Court No. 01CR507, claiming that he was not given effective assistance by his public defender contrary to the Sixth Amendment to the United States Constitution.  The jury trial was held on August 5, 2002.  The charge was based on a sexual encounter between Sa'Ra and Lori McVea in her apartment on the night of January 17-18, 2001.  The defense to McVea's claim of rape was that she consented to sexual intercourse with Sa'Ra.  The credibility of the trial testimony of McVea was the determinative question for the jury.  There was no objective evidence to support the charge.  A physical examination of McVea by an emergency room physician, described as a rape kit, was found to be consistent with either vigorous consensual or non-consensual sex.

The jury heard evidence that cast doubt on McVea's version of the events, particularly circumstances suggesting that she was motivated to cause Sa'Ra's imprisonment in revenge for his extra-marital affair with Renee Singleton. Sa'Ra was on parole from a forgery conviction with his required residence to be with his wife. She reported to his parole officer that he was not in compliance in November, 2000. That resulted in an escape charge and his arrest on January 28, 2001. He was placed in custody at the Arkansas Valley Correctional Facility for violation of parole.

The rape charge was filed in February, 2001, but for reasons not explained Sa'Ra was not notified until May, 2001. His advisement hearing was on May 31, 2001.

Sa'Ra was given an evidentiary hearing pursuant to Crim.P.35(c) on January 20, 2009, on his claim of ineffective assistance of his trial counsel for a failure to investigate the availability of an impeaching witness, Janice Hoskins. The principal witnesses at that hearing were Janice Hoskins, Dana Caspar and Sa'Ra. Dana Caspar was the public defender representing Sa'Ra. The trial court denied relief, finding that Caspar made a tactical decision not to call Hoskins and that her decision was understandable. Accordingly, trial counsel's performance was not deemed to be deficient. The Colorado Court of Appeals affirmed that decision in an unpublished opinion announced September 16, 2010. Notably, the appellate court wrote:

> She (Caspar) said she had no specific recollection about why she did not call J.H. as a witness, but her routine practice as an attorney was to not present evidence that would hurt a client. Therefore, J.H. must have had something negative to say or counsel would have called her as a witness.

Under the controlling law established in *Strickland v. Washington,* 466 U.S. 668 (1984) the Sixth Amendment is violated when an attorney's performance as trial counsel

falls below an objective standard of reasonableness, defined as "the exercise of the skill, judgment and diligence of a reasonable competent defense attorney." *Fisher v. Gibson,* 282 F.3d 1283, 1292 (10th Cir. 2002), quoting *Osborn v. Shillinger,* 861 F.2d 612 at 625 (10th Cir. 1988).  That includes a duty to conduct an adequate investigation of all reasonable lines of defense or to make reasonable determinations that such investigation is not necessary.  *Fisher* at 1296.

Under the Anti-Terrorism and Effective Death Penalty Act, a writ of habeas corpus can be granted only if the state court decision adjudicating a Sixth Amendment claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The trial court determined that the public defender spoke with Hoskins and had an investigator speak with her.  Hoskins had no recollection of a contact with either the attorney or the investigator.  Giving credence to Caspar's testimony there was no reasonable basis for finding that there was an adequate investigation because there is no record of the result of any contact with this potential witness.  As the trial court noted, Caspar had no recollection of any information that Hoskins had.  Caspar had no explanation for failing to call Hoskins as a witness.  She assumed that there was something that would have been damaging to her client.  The trial court accepted that speculation and added that calling Hoskins may have required disclosure of the defendant's custodial status.

Stated simply, there was no evidence presented that Caspar knew what Hoskins could have provided as impeachment of McVea's testimony and no explanation of a rationale for not calling Hoskins as a witness. That is below the standard of performance for an investigation of this case because the credibility of McVea was the central focus of the defense.

The state court did not address the second prong of *Strickland*–whether the failure to investigate Hoskins resulted in prejudice to the defense. That question must be decided *de novo* from the record presented. To grant the writ this Court must determine that the petitioner has shown a reasonable probability that but for counsel's professional errors the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694. In *Harrington v. Richter*, 131 S.Ct 770, 792 the Court said:

> In assessing prejudice under *Strickland,* the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different.... This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case."... The likelihood of a different result must be substantial, not just conceivable.
>
> (Internal citations omitted.)

As the Supreme Court has recently held, a fact-specific analysis is required, *Sears v. Upton,* 130 S.Ct. 3259 (2010).

Defense counsel cross-examined McVea extensively, exposing her anger and distrust of Sa'Ra because of his infidelity, her prior inconsistent statements, the details

of the charged event and her communications with Sa'Ra while he was incarcerated. Additional impeachment came from Cheryl Turner, Sa'Ra's sister, who refuted McVea's denial of contacts with him and who said she saw McVea and Sa'Ra in sexual contact on the night of January 18, 2001. Renee Singleton testified to McVea's anger toward her in a telephone conversation during which McVea said if she could not have Sa'Ra, no one could. Janice Alexander testified to the same effect.

Accepting Hoskins' testimony at the Rule 35(c) hearing, she could have corroborated Singleton's testimony by relating a 3-way telephone conversation among Singleton, Hoskins and McVea and added more from a 3-way conversation with Sa'Ra, McVea and herself. Hoskins testified that McVea admitted in a telephone conversation in late January, 2001, that she was not raped and was getting even with Sa'Ra for his rejection of her and refusal to stop seeing Singleton.

Hoskins had a very close relationship with McVea, who called her "Auntie," and was her surrogate mother through her teenage years. Hoskins said that McVea often acted hysterically with outbursts of anger. Counsel for the petitioner emphasizes the importance of this relationship because Hoskins would have been presented as a neutral witness with any bias being more toward McVea than Sa'Ra. Hoskins had intervened between them at times trying to support the marriage.

What supports the jury's acceptance of McVea's claim of rape is the immediacy of her outcry. She called the police. Officer Camacho testified that when he responded to the call he found McVea was hysterical, repeatedly saying that "he raped me" and that she gave a description of the events. The officer said she gave more details at the hospital after she had calmed down.

The jury had difficulty with the case. They reported a deadlock at ten to two and deliberated into the evening on a Friday. How the jurors might have been influenced by the testimony of Hoskins is a question that cannot be answered within any reasonable degree of probability.

The petitioner is not required to show that the verdict would have been an acquittal. The respondents emphasize the importance of the jury's observation of the demeanor and manner of the witnesses giving testimony in determining whether they are worthy of belief. This court does not have that opportunity and weighs it heavily in the balance of the post conviction evidence with the trial testimony. The adversarial adjudication of criminal charges depends upon the collective judgment of the jurors and upon review of the record presented this court is unable to find that there is a reasonable likelihood that the result in this case would have been different if this jury had heard the testimony that Janice Hoskins gave at the Rule 35(c) hearing.

Because the petitioner has not shown prejudice from his lawyer's failure to obtain the testimony of Janice Hoskins, it is

ORDERED, that the petition for a writ of habeas corpus is denied and this civil action is dismissed, Judgment to enter.

DATED: August 17th, 2012

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge